TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANNA P. FARIAS-EISNER (Cal. Bar No. 322791)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2170
    Facsimile: (213) 894-0141
    E-mail:   anna.farias-eisner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00601-DMG |
|---|---|
| Plaintiff, | **GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT CEDRIC DUVAL** |
| v. | |
| CEDRIC DUVAL, | Sentencing Date: 04-12-2022<br>Sentencing Time: 3:00 p.m.<br>Location: Courtroom of the<br>         Hon. Dolly M. Gee |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Anna P. Farias-Eisner, hereby files its sentencing position for defendant Cedric Duval ("defendant").

//
//
//
//

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report ("PSR") (Dkt. 50), the United States Probation and Pretrial Services ("USPO") Recommendation Letter ("USPO Rec. Ltr") (Dkt. 49), and such further evidence and argument as the Court may permit.  The government is also simultaneously filing under seal exhibits in support of this sentencing position.

Dated: March 21, 2022           Respectfully submitted,

                                TRACY L. WILKISON
                                United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division


                                  */s/ Anna Farias-Eisner*
                                ANNA P. FARIAS-EISNER
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On November 17, 2020, while en route to make his initial appearance on an unrelated, out-of-district arrest warrant, defendant violently attacked two federal agents. While the agents were driving at high speeds on the freeway, defendant aggressively and repeatedly kicked, spat, and screamed at the agents. Defendant's violent assault not only caused the agents to suffer a concussion, bruises, red marks, and severe emotional distress, but defendant also recklessly threatened all of their lives and the lives of others driving on the freeway. Based on this conduct, defendant pleaded guilty, pursuant to the parties' written plea agreement, to count one of the indictment, which charged defendant with assault on a federal officer resulting in bodily injury, in violation of 18 U.S.C. §§ 111(a)(1), (b).

The government agrees with the USPO's guideline range calculation under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") but disagrees with the USPO's low-end recommendations. Based on an offense level of 14 and a criminal history category of III, the government agrees that defendant's guideline range is 21 to 27 months' imprisonment followed by a term of one to three years' supervised release. Based on these ranges, the USPO recommends a low-end sentence of 21 months' imprisonment followed by a one-year term of supervised release. Instead, the government recommends a high-end sentence of 27 months' imprisonment followed by a three-year term of supervised release to justly account for the seriousness of defendant's physical assault and reckless

disregard for human lives, the need to deter defendant, and the need to protect the public against his violent tendencies.

## II.   STATEMENT OF FACTS

As set forth in the plea agreement and summarized in the PSR, on November 17, 2020, defendant forcibly assaulted two special agents, who were engaged in federal official duties and who sustained bodily injuries. (PSR ¶¶ 10-14; Dkt. 45, "Plea Agr." ¶ 9.)  At the time of the assault, victims C.P. and M.V. (collectively, the "agents") were special agents with the Department of Labor within the Office of the Inspector General. (PSR ¶ 10; Plea Agr. ¶ 9.)  The agents were engaged in their official duties by transporting defendant to his initial appearance at the Roybal Federal Courthouse in Los Angeles (the "courthouse") on an arrest warrant from the United States District Court for the Southern District of Florida for an unrelated fraud indictment. (Id.; see also United States v. Duval, et al., No. 9:19-CR-80047-WPD-1, Indictment, Dkt. 1 (S.D. Fl. 2019).)  At the time of the assault, defendant was also on probation for a prior state conviction for forgery, in violation of California Penal Code Section 470 in case number GLN7GD0398601. (PSR ¶ 40; Plea Agr. ¶ 9.)

Specifically, on that day, the agents picked up defendant from custody with the Los Angeles Police Department to transport defendant to the custody of the United States Marshals Service. (PSR ¶ 10; Plea Agr. ¶ 9.)  The agents identified themselves to defendant as federal agents and showed defendant their agency-issued "Special Agent" badges, which were also visible on the outer-wear of their clothing. (Id.)  The agents handcuffed defendant and placed him in the backseat of their official government vehicle. (Id.)  Special Agent C.P. drove the car, while Special Agent M.V. sat in the rear

driver-side passenger seat next to defendant. (Id.) While on their way to the courthouse, defendant demanded that the agents take him to his relative's house. (PSR ¶ 11; Plea Agr. ¶ 9.) After Special Agent C.P. drove past the turn to the defendant's relative's house and onto the on-ramp for the 110 freeway in Los Angeles, defendant became aggressively irate, verbally abusive, and physically combative. (Id.) Despite being handcuffed, defendant unbuckled his seatbelt and repeatedly kicked, spat, and screamed at the agents. (Id.) Defendant also intentionally made physical contact with the agents by forcibly and repeatedly kicking the back of Special Agent C.P.'s head, shoulder, back, and arm while she was driving the car at high-speeds on the freeway. (Id.) Defendant yelled at Special Agent C.P., "bitch . . . if you don't do what I say I will come after you." (Id.) Defendant also forcibly kicked Special Agent M.V. in the face, jaw, and head. (Id.)

Special Agent C.P. managed to pull the car over to the far-left lane of the 110 freeway. (PSR ¶¶ 12-13.) Once the car was stopped, the agents exited the car, closed the doors with defendant inside, and called for back-up. (Id.) Defendant attempted to escape by trying to open the car door onto the freeway, but the agents managed to keep the door shut and defendant inside. (Id.) The California Highway Patrol and Los Angeles County Fire Department arrived to assist. (Id.) Defendant was sedated and transported to the hospital. (Id.)

During defendant's assault, he inflicted bodily injury on the agents. Special Agent C.P. sustained a concussion and obvious bruises to her back and shoulder, and Special Agent M.V. suffered visible red marks to his chin and jaw. (PSR ¶ 14; Plea Agr. ¶ 9.)

3

**III. SENTENCING GUIDELINES CALCULATIONS**

The government agrees with the PSR's calculation of defendant's total offense level of 14:

| | | |
|---|---|---|
| Base Offense Level: | 10 | U.S.S.G. § 2A2.4(a) |
| Offense involved physical contact | +3 | U.S.S.G. § 2A2.4(b)(1)(A) |
| Victim sustained bodily injury | +2 | U.S.S.G. § 2A2.4(b)(2) |
| Reckless Endangerment | +2 | U.S.S.G. § 3C1.2 |
| Acceptance of Responsibility: | -3 | U.S.S.G. §§ 3E1.1(a), (b) |
| **Total Offense Level** | **14** | |

(PSR ¶¶ 22-33.) The parties agree in the plea agreement to the above base offense level, specific offense characteristics, and adjustments, while also reserving the right to argue for additional specific offense characteristics, adjustments, and departures as appropriate. (See Plea Agr. ¶¶ 3(d), 11.) The government also agrees with the PSR's calculation of defendant's Criminal History Category III based on six criminal history points. (Id. ¶¶ 36-41.) A total offense level of 14 and a Criminal History Category of III result in an advisory Guidelines range of 21 to 27 months' imprisonment. (PSR ¶ 77.)

**IV.   ANALYSIS UNDER THE SECTION 3553(a) FACTORS**

The government respectfully recommends a term of imprisonment of 27 months' imprisonment, a three-year term of supervised release, and a $100 special assessment. The government believes that such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a). Similarly, per

§ 3553(a)(6) and § 5G1.3(B), any sentence this Court imposes should be consecutive to the sentence that defendant is currently serving in the Southern District of Florida because the two offenses are unrelated.

### A. Nature and Circumstances of the Offense

The nature and circumstances of defendant's crimes support a high-end custodial sentence of 27 months' imprisonment. See 18 U.S.C. § 3553(a)(1). Defendant violently attacked two federal agents. Defendant, who is 5 feet, 11 inches and 260 pounds (PSR ¶ 54), used his large statue to forcibly kick agents so hard that one suffered a concussion and bruising down her back and the other suffered visible red marks across his face. Defendant did so while yelling and spitting, during a time when the COVID-19 virus was reaching all-time highs throughout the country and vaccines were not yet available. He also threatened the lives of the agents and the general public. Not only did defendant physically assault these particular agents, but he also recklessly attacked the agents while they were driving at high speeds on the freeway in close proximity to other cars. Defendant kicked the driving agent so hard and repeatedly that she suffered a concussion; he was lucky that the assault did not cause a significant car accident resulting in even worse damage and injury. In fact, in the plea agreement, defendant agreed that his conduct "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2.

Defendant's assault was so violent that the agents suffered injury well beyond their physical bruising. Agent C.P. suffered such significant emotional injury that she took over one month extended

leave and ultimately resigned from her duties as a federal law enforcement officer due to the attack. The agents' heroism during the violent attack was also recognized and commended by the United States Department of Labor, and each agent was awarded the Secretary's Valor Award for their courage involving a high degree of personal risk in the face of danger.

The recommended custodial sentence justly addresses the seriousness of this offense. Any sentence below a high-end sentence is too lenient given the seriousness of defendant's violent attack and high risk of life-threatening danger to the agents and others.

### B. History and Characteristics of Defendant

Defendant's history and characteristics support a high-end sentence. Defendant may cite his personal background and drug addiction as justification for a variance or sentence lower than the high-end. It does not. First, this is not a drug case, nor is it a case about theft to support a drug habit. It is a case about defendant's assault on federal officers that was so violent that it caused bodily injury to the victims, threatened the lives of countless others, led to one agent's resignation from her duties as a law enforcement officer, and resulted in both agent's recognition for their courage in the face of danger. There is also no evidence that defendant was under the influence of drugs at the time he committed the assault. Any drug use that may have been involved prior to defendant's attack does not justify or mitigate the seriousness of defendant's violence.

Second, defendant is not a stranger to acts of violence. While not adding to his criminal history score, defendant was convicted for disorderly conduct in 2009 that similarly arose out of defendant's

6

aggression and violence while in the car. (PSR ¶ 36.) Defendant, after arguing with that victim, "struck the victim in the back of the head." (Id.) In fact, defendant proceeded to violate the terms of his sentenced probation by failing to complete anger management among other offenses. (Id.) Eleven years later, defendant's behavior has not changed, but rather escalated as he violently attacked two federal agents while they were driving at high speeds. Furthermore, defendant committed the instant offense while under federal indictment and while on state probation.

The recommended high-end sentence appropriately addresses the defendant's history and background.

### C. Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public

The sentence must satisfy defendant's need for punishment or rehabilitation, as well as society's need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public. There is a strong need for the sentence to deter defendant and others from committing future crimes. 18 U.S.C. § 3553(a)(2)(B) (the sentence imposed is required "to afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence); see also United States v. Goff, 501 F.3d 250, 261 (3d Cir. 2007). Defendant's violence recklessly created a substantial risk of death and bodily injury to the agents, to himself, and to others driving on the freeway. Prior sentences for his violent conduct have apparently done little to deter defendant. A high-end custodial sentence, along with a three-year period of supervised release with the conditions recommended by the USPO, is therefore

7

necessary to deter defendant in the future and thereby protect the public.  The recommended sentence would also provide a significant warning to others from engaging in similar acts of violence against law enforcement officers and high risk of danger to others' lives.

Accordingly, the government's recommended high-end sentence of 27 months' imprisonment appropriately balances and accounts for the aggravating seriousness of the violence with any mitigation from defendant's accepted responsibility.

### D. Consecutive Sentence

Finally, the government agrees with the USPO that defendant's sentence in this case should run consecutively to the sentence that he is currently serving in the Southern District of Florida.  Section 5G1.3 of the Sentencing Guidelines discuss the imposition of a sentence subject to undischarged terms of imprisonment, including concurrent sentences for "another offense that is relevant conduct to the instant offense of conviction."  U.S.S.G § 5G1.3(B).  However, contrary to any argument defendant may raise and as correctly noted by the USPO, defendant's "conduct of the instant offense is separate and unrelated to [defendant]'s conduct in the [Florida fraud case]."  (USPO Rec. Ltr. at 5.)  Here, defendant assaulted two federal officers, whereas in the Florida case, defendant was convicted for conspiracy to commit access device fraud and aggravated identity theft.  (Duval, et al., No. 9:19-CR-80047-WPD-1, Plea Agr., Dkt. 71.) There is nothing remotely similar between the two offenses, other than that defendant committed the instant offense while en route to his initial appearance for the Florida offense.  As the USPO accurately explains, "[c]oncurrent sentences would provide no incremental punishment for his current offense."  (USPO Rec. Ltr. at

6.) If anything, a concurrent sentence would reward defendant for committing the instant offense while under indictment for the Florida offense.

Furthermore, the Court should sentence defendant in a manner that avoids unwarranted sentencing disparities among other defendants with similar records who commit two separate offenses at or near the same time. The best way to ensure consistent sentences for similarly situated defendants across courtrooms, districts, and the country is to apply the Sentencing Guidelines uniformly. United States v. Saeteurn, 504 F.3d 1175, 1181 (9th Cir. 2007).

A concurrent sentence would result in a windfall for this defendant, rewarding him for committing the instant acts of violence in such close temporal proximity to his fraud offenses that he receives a benefit for being sentenced simultaneously. This is contrary to the purpose of the sentencing guidelines and the factors enumerated in 18 U.S.C. § 3553(a), particularly § 3553(a)(6).

**V.    CONCLUSION**

For all of the foregoing reasons, the government respectfully requests a sentence of 27 months' imprisonment followed by a term of three years of supervised release and payment of a $100 special assessment.